UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARK A. KEYES and BELINDA L. KEYES, | § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:21-cv-00504 |
| QUICKEN LOANS, LLC, | § § | With Jury Demand Endorsed |
| Defendant. | § § | |

**COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs Mark A. Keyes and Belinda L. Keyes ("Plaintiffs"), by and through counsel, for their Complaint against Defendant Quicken Loans, LLC ("Quicken" or "Defendant"), state as follows:

**I. INTRODUCTION**

1. Defendant has engaged in willful, malicious, coercive, deceptive and harassing actions against Plaintiffs in furtherance of Defendant's efforts to illegally collect from Plaintiffs, *in personam*, a debt that was included in their bankruptcy case, while Defendant knew the real property securing the debt had been surrendered in Plaintiffs' Chapter 7 bankruptcy, the Property was listed as being surrendered in Plaintiffs' Statement of Intention, and Plaintiffs were protected by the bankruptcy's automatic stay and then the discharge injunction. Plaintiffs allege that during the bankruptcy and even after the debt had been discharged, Defendant repeatedly called Plaintiffs on their cell phones demanding payment and sent monthly billing statements, delinquency notices, emails, and correspondence seeking payment or actions to benefit Defendant.

2. Plaintiffs claim Defendant violated: 1) Tex. Fin. Code § 392.001 *et seq.*, known as the Texas Debt Collection Act ("TDCA"); 2) the common law prohibiting invasion of privacy, 3) the automatic stay; and 4) the discharge injunction of the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.  Plaintiffs seeks to recover from Defendant actual, statutory, and punitive damages, and legal fees and expenses.

## II. Parties

3. Plaintiffs are natural persons residing in Wood County, Texas, and each is a "consumer," as defined by the TDCA, Tex. Fin. Code § 392.001(1).

4. Defendant Quicken Loans, LLC is a foreign limited liability company which may be served by delivering citation to its registered agent, CT Corporation System, 1999 Bryan St. Suite 900, Dallas, Texas 75201-4234.

5. Defendant is a "creditor," "debt collector," and/or "third-party debt collector" under the TDCA, Tex. Fin. Code §§ 392.001(3), (6)(7).

6. The debt at issue that Defendant was attempting to collect from Plaintiffs was a "consumer debt," as defined by Tex. Fin. Code § 392.001(2).

## III. Jurisdiction and Venue

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334, and 1367.

8. Venue is proper in this district because Defendant transacts business in this district, the bankruptcy was filed in this district, and the conduct complained of occurred in this district.

IV. FACTUAL ALLEGATIONS

A.  **Plaintiffs Filed a Chapter 7 Bankruptcy, Surrendered the Collateral Property and Received a Discharge of Their Personal Liability for the Subject Debt.**

9. On June 19, 2020, Plaintiffs filed a Chapter 7 bankruptcy in case number 20-41404-mxm7 (the "Bankruptcy Case") in the Eastern District of Texas Bankruptcy Court, Sherman Division (the "Bankruptcy Court"), and listed Defendant on Schedule D as a secured creditor with an account number ending in 7783 (the "Account"), secured by property at 559 County Road 3512, Dike, TX 75437 (the "Property").

10. A true and correct copy of relevant portions of Plaintiffs' Schedule D is attached hereto as Exhibit "A."

11. With their Chapter 7 Petition, on June 19, 2020, Plaintiffs filed their Statement of Intention for Individuals Filing Under Chapter 7 indicating that they were surrendering the Property, which relieved Defendant from any and all legal duty under any state or federal statute to send Plaintiffs notices concerning the Property other than what was necessary to foreclose its security interest therein.  To the extent Defendant alleges it had to send Plaintiffs loan-related communications pursuant to the Truth in Lending Act, Regulation Z, 12 CFR 1026 ("TILA" or "Regulation Z") wholly fails, as Regulation Z only pertains to sending periodic statements, not all of the types of letters at issue here.  At all relevant times, Defendant was exempt from Regulation Z requirements to send periodic statements to the Plaintiffs, according to applicable Regulation Z exemptions pertaining to sending statements on residential mortgage loans to consumers in bankruptcy.  Plaintiffs filed a Statement of Intention which gave notice to Defendant that the Property was to be surrendered.

12. A true and correct copy Plaintiffs' Statement of Intention is attached hereto as Exhibit "B."

13. On June 24, 2020, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") to Defendant by electronic transmission. The 341 Notice warned all creditors, in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. § 362.

14. On September 23, 2020, the Bankruptcy Court issued an order granting Plaintiffs a discharge ("Discharge Order"). The Discharge Order followed Official Form 318, including the explanatory language contained therein. The Discharge Order discharged Plaintiffs from any liability for the debt created by the Account. Included with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "**Creditors cannot collect discharged debts**" and that "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees."

15. A true and correct redacted copy of Plaintiffs' Discharge Order is attached hereto as Exhibit "C."

16. On September 25, 2020, the Bankruptcy Noticing Center sent a copy of the Discharge Order to Defendant by electronic transmission. The Discharge Order constituted notice to Defendant of the discharge granted in Plaintiffs' Bankruptcy Case and the replacement of the automatic stay of 11 U.S.C. § 362 with the discharge injunction imposed by 11 U.S.C. § 524(a).

17. At no time did Defendant object to the manner in which the Account was listed in Schedule D.

18. At no time did Plaintiffs reaffirm the debt on the Account with any person or entity.

19. At no time did the Bankruptcy Court declare the debt on the Account to be non-dischargeable.

**B. During Plaintiffs' Bankruptcy Case and After Plaintiffs Received a Discharge of the Debt, Defendant Made Harassing Contacts with Plaintiffs and Attempted to Collect the Debt from Them.**

20. While Plaintiffs' Bankruptcy Case was pending, after they surrendered the Property, while the automatic stay was in effect and even after the debt was discharged, Defendant contacted Plaintiffs about the Account to coerce or deceive them into making payments on the Account by: 1) calling Plaintiffs numerous times; and 2) sending Plaintiffs mortgage statements, emails, notices and other correspondences.

**1) During the Bankruptcy Case, Defendant Made Prohibited Calls, Emails and Sent Statements to Plaintiffs.**

21. Beginning on or about June 19, 2020, Defendant's employees or agents called Plaintiffs on their cell phones on numerous occasions regarding the Account, their intentions, and asking for payments or for Plaintiffs to take other actions to benefit Defendant financially. Plaintiffs objected to these calls and, on numerous occasions, advised the callers of the bankruptcy and automatic stay and asked them not to contact them about the Property or the Account.

22. Additionally, throughout Plaintiffs' bankruptcy case, Defendant sent Plaintiffs monthly mortgage statements, as well as emails at least twice a month regarding the Account offering them a loan modification or other options to foreclosure of the Property, even though Plaintiffs surrendered the Property and indicated such in the Statement of Intention filed with their Petition.

> **2)    After Plaintiffs' Bankruptcy was Discharged, Defendant Made Harassing Contacts with Plaintiffs and Attempted to Collect the Debt from Them.**

23.  Following the September 23, 2020 entry of the Discharge Order in Plaintiffs' Bankruptcy Case, Defendant engaged in prohibited debt collection activity against Plaintiffs on the Account by calling them and by sending correspondences, delinquency notices, and billing statements to coerce and deceive Plaintiffs into paying on the discharged debt or take actions to financially benefit Defendant to their detriment.

24.  As examples, on or about March 16, 2021, Defendant sent Plaintiffs a Billing Statement, with a detachable payment coupon, representing that there was a "Payment Amount" due of $19,573.08 by April 1, 2021, which included taxes and insurance on the Property, a past unpaid amount of $17,722.92, and late fees totaling $447.84.  The statement went on to say that "If payment is received after 11:30 p.m. ET on 04/16/2021, a $37.32 late fee will be charged." The statement also provides "Quick and Easy Payment Options … Pay by phone system with 24/7 access by calling (800) 646-2133 … Send check payable to Quicken Loans LLC, P.O. Box 6577 Carol Stream, IL 60197-6577."   The statement also represents that the "Principal Balance" is $147,138.56, even though the Property was surrendered and vacated, and the debt discharged.

25.  A true and correct redacted copy of the March 16, 2021 statement Defendant sent to Plaintiffs is attached hereto as Exhibit "D."

26.  On or about April 14, 2021, Defendant sent Plaintiffs an email asking: "See if you can lower your monthly payment….," even though the Property had been surrendered and vacated, and the debt already discharged.

27.  A true and correct copy of the April 14, 2021 email Defendant sent to Plaintiffs is attached hereto as Exhibit "E."

28. On April 15, 2021, Defendant sent Plaintiffs an email suggesting they may be able to refinance their monthly mortgage payment and stating: "Quicken is ready to help you look at your options! <u>Click to get started now</u>," even though the Property had been surrendered and vacated, and the debt discharged.

29. A true and correct copy of the April 15, 2021 email Defendant sent to Plaintiffs is attached hereto as Exhibit "F."

30. On April 16, 2021, Defendant sent Plaintiffs an email offering to refinance the Property and providing them a link to calculate what their new payments would be. The email states: "Take a look and see if you could reduce the monthly payment for your home in Dike (no log in required)," even though the Property had been surrendered and vacated, and the debt discharged.

31. A true and correct copy of the first April 16, 2021 email Defendant sent to Plaintiffs is attached hereto as Exhibit "G."

32. On April 16, 2021, Defendant sent Plaintiffs another email "New guidelines could mean you qualify…," and asked: "Have you ever thought about refinancing your mortgage," even though the Property was surrendered and vacated, and the debt discharged.

33. A true and correct copy of second April 16, 2021 email Defendant sent to Plaintiffs is attached hereto as Exhibit "H."

34. On or about April 16, 2021, Defendant sent Plaintiffs a Billing Statement, with a detachable payment coupon, representing that there was a "Payment Amount" due of $20,832.72 by May 1, 2021, which included taxes and insurance on the Property, a past unpaid amount of over $18,000, and late fees totaling over $480. As promised, a late fee of $37.32 was assessed on April 16, 2021, as well as a property inspection fee of $15.00 on April 9, 2021. The statement went on

to say that "If payment is received after 11:30 p.m. ET on 05/17/2021, a $37.32 late fee will be charged."  The statement also provides "Quick and Easy Payment Options … Pay by phone system with 24/7 access by calling (800) 646-2133 … Send check payable to Quicken Loans LLC, P.O. Box 6577 Carol Stream, IL 60197-6577."  The statement also represents that the "Principal Balance" is $147,138.56, even though the Property was surrendered and vacated, and the debt discharged.

35. A true and correct redacted copy of the April 16, 2021 statement Defendant sent to Plaintiffs is attached hereto as Exhibit "I."

36. On or about April 16, 2021, Defendant also sent Plaintiffs a "Supplemental Delinquency Notice," informing Plaintiffs that "The payments on this mortgage are past due.  To bring the loan current, the amount of $20,832.72 must be paid."  The Notice demands payment and does not contain any language referencing the bankruptcy filing or discharge.  The notice goes on to provide information for free housing counseling services to help homeowners, like Plaintiffs, who are having trouble making their mortgage payments.  The statement represents that Plaintiffs failed to make monthly payments from December 1, 2020 through April 1, 2021 and that a payment for May 1, 2021 was "Currently Due, " even though the Property was surrendered and vacated, and the debt discharged.

37. A true and correct redacted copy of the April 16, 2021 notice Defendant sent to Plaintiffs is attached hereto as Exhibit "J."

38. On or about May 15, 2021, Defendant sent Plaintiffs a Billing Statement, with a detachable payment coupon, representing that there was a "Payment Amount" due of $22,055.04 by June 1, 2021, which included taxes and insurance on the Property, a past unpaid amount of over $20,000, and late fees totaling over $480, as well as another $15 property inspection fee.  The

statement went on to say that "If payment is received after 11:30 p.m. ET on 06/16/2021, a $37.32 late fee will be charged." The statement also provides "Quick and Easy Payment Options … Pay by phone system with 24/7 access by calling (800) 646-2133 … Send check payable to Quicken Loans LLC, P.O. Box 6577 Carol Stream, IL 60197-6577." The statement also represents that the "Principal Balance" is $147,138.56, even though the Property was surrendered and vacated, and the debt discharged.

39.     A true and correct redacted copy of the May 15, 2021 statement Defendant sent to Plaintiffs is attached hereto as Exhibit "K."

40.     On or about May 15, 2021, Defendant also sent Plaintiffs a "Supplemental Delinquency Notice," informing Plaintiffs that "The payments on this mortgage are past due. To bring the loan current, the amount of $22,055.04 must be paid." The Notice demands payment and does not contain any language referencing the bankruptcy filing or discharge. The notice goes on to provide information for free housing counseling services to help homeowners, like Plaintiffs, who are having trouble making their mortgage payments. The statement represents that Plaintiffs failed to make monthly payments from January 1, 2021 through May 1, 2021 and that a payment for June 1, 2021 was "Currently Due, " even though the Property was surrendered and vacated, and the debt discharged.

41.     A true and correct redacted copy of the May 15, 2021 notice Defendant sent to Plaintiffs is attached hereto as Exhibit "L."

## V.  GROUNDS FOR RELIEF - COUNT I

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

42.     Plaintiffs repeat, re-allege, and incorporate by reference the foregoing paragraphs, as if fully rewritten here.

43. Defendant has violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

    a) Tex. Fin. Code § 392.301(a)(8) prohibits Defendant from taking an action prohibited by law. Inasmuch as: 1) the bankruptcy automatic stay and discharge injunction prohibit anyone from attempting to collect debts included or discharged in bankruptcy, *in personam*; and 2) the common law protects Plaintiffs' privacy rights, Defendant's actions at issue of calling Plaintiffs and sending Plaintiffs statements, notices, e-mails and other correspondences during their bankruptcy and post-discharge also violated the TDCA. They were threats of further illegal and harassing collections and contacts from Defendant to Plaintiffs in violation of the TDCA;

    b) Tex. Fin. Code § 392.303(a)(2) prohibits Defendant from collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer. Inasmuch as Defendant was attempting to charge interest, late and property inspection fees, taxes and insurance premiums on the Property post-discharge, it violated this section of the TDCA;

    c) Tex. Fin. Code § 392.304(a)(3), which prohibits representing falsely that the debt collector has information or something of value for the consumer in order to solicit or discover information about the consumer. Inasmuch as Defendant was soliciting Plaintiffs to contact them to modify and/or refinance their loan (as evidenced by the emails at issue) after Plaintiffs had surrendered and vacated the Property and received a discharge of the debt, Defendant made false representations and solicitations to Plaintiffs to obtain their personal and confidential information to further Defendant's illegal post-discharge collection efforts on the discharged debt against Plaintiffs;

    d) Tex. Fin. Code § 392.304(a)(8), Defendant misrepresented information to Plaintiffs about the character, extent, or amount of the discharged debt on the Account, prohibited by this section of the TDCA, which was relayed to Plaintiffs and printed on the subject post-discharge:

        1) billing statements, representing there were periodic payments due and owing on the Account by a specific date, with fees accruing, including monthly charges for taxes and insurance premiums; and

          2)     loss mitigation letters and emails offering to refinance or modify Plaintiffs' mortgage and/or lower their monthly mortgage payments.

    e)     Tex. Fin. Code § 392.304(a)(12) prohibits representing that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges, if a written contract or statute does not authorize the additional fees or charges. Since 11. U.S.C. § 524(a) prohibited Defendant from collecting on the discharged debt on the Account, as Plaintiffs were no longer personally liable for it upon discharge, Defendant's representations to Plaintiffs that they were responsible for post-discharge late fees and charges related to the Account violated this section of the TDCA; and

    f)     Tex. Fin. Code § 392.304(a)(19) prohibits Defendant's use of false representations or deceptive means to collect a debt. In addition to the reasons stated in the preceding paragraphs, Defendant also mispresented that it sent monthly statements for compliance and/or informational purposes when it was aware that Regulation Z exempted Defendant from sending monthly statements post-discharge as Plaintiffs had listed the Property as surrendered in their Statement of Intention. Defendant intentionally tried to coerce or deceive Plaintiffs into paying the debt, while Defendant knew the Account was discharged in Plaintiffs' bankruptcy, rendering the debt legally uncollectible from Plaintiffs *in personam*.

44.     Regarding Plaintiff's claim against Defendant under Tex. Fin. Code § 392.304(a)(8), all of Defendant's misrepresentations made to Plaintiffs about the character, extent, amount or status of the subject discharged debt, were made by design to deceive Plaintiffs into believing they were still personally liable for the discharged debt, and did in fact cause Plaintiffs to have such belief. Defendant's misrepresentations made to Plaintiffs caused and resulted in them thinking differently about the character, extent, amount or status of the subject discharged debt. After they received their bankruptcy discharge, Plaintiffs believed they were no longer personally liable of the debt on the Account; however, Defendant's misrepresentations at issue, made them think perhaps their bankruptcy attorney made an error, or there was some issue about which they

were unaware, that caused the debt to not be discharged in their Bankruptcy Case and they had to pay it.  This caused and exacerbated their mental anguish and emotional distress.

45. Under Tex. Fin. Code Ann. § 392.403, Defendant's actions make it liable for Plaintiffs' actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees.  Also, Plaintiffs' injuries resulted from Defendant's malice, actual fraud and/or willful and intentional misconduct, entitling Plaintiffs to recover punitive damages.

46. Because of Defendant's conduct, Plaintiffs were forced to hire counsel to pursue this action, and Plaintiffs' recoverable damages include their reasonable attorney's fees incurred in prosecuting this claim.

## VI.  GROUNDS FOR RELIEF- COUNT II

### INVASION OF PRIVACY

47. Plaintiffs repeat, re-allege, and incorporate by reference the foregoing paragraphs, as if fully rewritten here.

48. At all pertinent times, Plaintiffs had a reasonable and lawful expectation not to be contacted and harassed by Defendant during the pendency of their bankruptcy and after the Account had been discharged.  Thus, Defendant's collection calls to Plaintiffs and sending of emails, statements and notices were invasions of Plaintiffs' privacy rights.  These wrongful acts of Defendant caused injury to Plaintiffs.

49. Defendant's wrongful acts were invasions of Plaintiffs' privacy rights and caused injury to Plaintiffs, which resulted in extreme emotional anguish, loss of time and inconvenience. Plaintiffs' injuries resulted from Defendant's malice, which entitles Plaintiffs to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VII.  GROUNDS FOR RELIEF – COUNT III

### VIOLATION OF THE AUTOMATIC STAY

50. Plaintiffs repeat, re-allege, and incorporate by reference the foregoing paragraphs, as if fully rewritten herein.

51. At all material times, Defendant had actual knowledge of Plaintiffs' Bankruptcy Case and of the automatic stay prohibiting any attempt to collect on the Account.

52. Defendant attempted to collect from Plaintiffs personally on the Account or to get Plaintiffs to act to benefit the Defendant, as evidenced by Defendant's collection calls it made to Plaintiffs during their Bankruptcy Case, and by the sending of emails, statements and other notices and correspondences to Plaintiffs, and misrepresentations made to Plaintiffs related to and stemming from the foregoing actions.

53. Defendant violated the part of the Bankruptcy Court's Automatic Stay pertaining to 11 U.S.C. § 362(a)(1) which "operates as a stay, applicable to all entities, of—the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arouse before the commencement of the case under this title;…" regarding all of Defendant's prohibited harassing and collection actions it took at issue during the pendency of the Bankruptcy Case by making the collection calls at issue to Plaintiffs, when Defendant had actual knowledge about Plaintiffs' Bankruptcy Case and the automatic stay, which went into effect when the Bankruptcy Case was filed and prohibited all creditors and debt collectors from contacting Plaintiffs to furtherance of *in personam* collections against Plaintiffs of pre-petition debt during the pendency of the Bankruptcy Case.

54. Notwithstanding Defendant's knowledge of Plaintiffs' Bankruptcy Case, Defendant failed to cease its *in personam* debt collection activity on the Account and debt at issue when it became aware Plaintiffs filed for bankruptcy protection and while their case was active and pending, as evidenced by Defendant's collection activity at issue during Plaintiffs' Bankruptcy Case.

55. Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the bankruptcy filed by Plaintiffs.  After this prima facie showing by Plaintiffs, the duty falls on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability.  Failing a showing by Defendant of its present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiffs must prevail on their claims, and Defendant must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court.  Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant.  Any allegation of a good faith exception should not be allowed.

56. There are no exceptions under 11 U.S.C. § 362, other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendant's conduct, which was in blatant disregard of the automatic stay.

57. Prior to Defendant's actions at issue, Plaintiffs had surrendered the Property and filed for bankruptcy.  The totality of Defendant's pre-discharge actions at issue, as well as the individual actions, constitute violations of the automatic stay as set forth in 11 U.S.C. § 362.

58. The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint,

none of which occurred here.  No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

59. Also, there is no requirement of mitigation on the part of Plaintiffs that is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court.  Any burdening of Plaintiffs with an obligation to police the misconduct of Defendant would be a complete derogation of the law.  It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost of compliance.  Any attempt by Defendant to mount such a defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited.  Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant.  No defense of failure to mitigate should be allowed.

60. Plaintiffs have been injured and damaged by Defendant's actions, and Plaintiffs are entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendant's violations of 11 U.S.C. § 362 and pursuant to the Court's powers under 11 U.S.C. § 105.

### VIII.  GROUNDS FOR RELIEF- COUNT IV

#### VIOLATION OF THE DISCHARGE INJUNCTION

61. Plaintiffs repeat, re-allege, and incorporate by reference all paragraphs above, as if set forth herein in their entirety.

62. At all material times, Defendant had actual knowledge of Plaintiffs' Bankruptcy Case and of the discharge of the debt on the Account.

63. The Defendant attempted to collect the discharged debt or to get Plaintiffs to take action to benefit the Defendant, as evidenced by its emails, notices, statements and telephone calls made to Plaintiffs when the Defendant was fully aware of both the Plaintiffs' bankruptcy filing and the bankruptcy discharge.

64. Defendant's actions were willful acts in furtherance of its efforts to collect the discharged debt from Plaintiffs in violation of the discharge injunction imposed by 11 U.S.C. § 524(a).  Further, Defendant's acts were harassing and attempts to coerce and deceive Plaintiffs to pay the discharged debt.  Defendant's failure to comply with the aforesaid laws, despite Defendant being on notice of Plaintiffs' Bankruptcy Case and discharge and the effect of Plaintiffs' discharge, illustrates Defendant's utter contempt for federal law and the discharge injunction.

65. The actions of Defendant constitute harassment and coercive and/or deceptive actions taken to collect a discharged debt from Plaintiffs in gross violation of the discharge injunction imposed by 11 U.S.C. § 524(a)(1)-(3).

66. Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the bankruptcy filed by Plaintiffs.  After this prima facie showing by Plaintiffs, the duty falls on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability.  Failing a showing by Defendant of its present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiffs must prevail on their claims, and Defendant must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court.  Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant.  Any allegation of a good faith exception should not be allowed.

67. Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order issued pursuant to 11 U.S.C. § 524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived . . ."

68. There are no exceptions under 11 U.S.C. § 524, other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendant's conduct, which was in blatant disregard of the discharge injunction.

69. The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here. No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

70. Also, there is no requirement of mitigation on the part of Plaintiffs that is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court. Any burdening of Plaintiffs with an obligation to police the misconduct of Defendant would be a complete derogation of the law. It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost of compliance. Any attempt by Defendant to mount such a defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant. No defense of failure to mitigate should be allowed.

71. Plaintiffs have been injured and damaged by Defendant's actions, and Plaintiffs are entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendant's violations of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

### IX. RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

72. After a reasonable time to conduct discovery in this case, Plaintiffs believe they will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of any type for Defendant in the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on Defendant for all actions at issue under a theory of *respondeat superior* and/or vicarious liability.

### X. DAMAGES

73. In addition to any damages previously stated hereinabove, the conduct at issue of Defendant has proximately caused Plaintiffs past and future monetary loss, mental distress; emotional anguish, migraine headaches, insomnia, and a discernable injury to Plaintiffs' emotional state; and other damages, evidence for all of which will be presented to the jury. Some days, Plaintiff Mark Keyes was unable to go to work due to the stress from the calls causing migraine headaches. Additionally, the relentless calls, statements, notices and e-mails demanding payment or offering foreclosure options caused significant stress on Plaintiffs' marriage. On occasion, the daily volume of collection calls would cause Mr. Keyes to drink excessive amounts of alcohol. Moreover, dealing with the consequences of Defendant's actions and trying to contact them or try to collect on the discharged debt has cost Plaintiffs time and mental energy, which are precious to them. Because Defendant's harassment was continuous and it failed to stop after repeated cease

and desist requests, Plaintiffs were concerned that something had gone wrong with the bankruptcy and were concerned that the debt was somehow not discharged.

74. Plaintiffs believe that, after reasonable discovery in this case, they will be able to show that all actions taken by, or on behalf of, Defendant were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiffs, with the actual knowledge that such actions were in violation of the law.

75. Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant's actions at issue are an integral part of Defendant's illegal design, implemented in its policies and procedures, to profit by harassing unsophisticated debtors and collecting debts that had been included in the debtors' bankruptcy case.

76. Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant has been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendant, intentionally and knowingly, has refused to correct its policies and comply with applicable laws, of which laws Defendant is well aware.

77. Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts included in bankruptcy.  Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant.  Moreover, Plaintiffs' injuries resulted from Defendant's malice, and/or willful and intentional misconduct, entitling Plaintiffs to punitive damages.

78. Due to Defendant's conduct, Plaintiffs were forced to hire counsel, and their damages include reasonable attorney's fees incurred in prosecuting their claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Mark A. Keyes and Belinda L. Keyes pray the Court:

A. Enter judgment in favor of Plaintiffs and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant's violations of the TDCA, invasion of privacy, the automatic stay and discharge injunction,

B. Find that appropriate circumstances exist for an award of punitive damages to Plaintiffs,

C. Award Plaintiffs pre-judgment and post-judgment interest as allowed by law, and

D. Grant such other and further relief, in law or equity, to which Plaintiffs might show they are justly entitled.

Respectfully submitted,

*/s/ James J. Manchee*
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFFS

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

Dated: June , 2021            */s/ James J. Manchee*
                              James J. Manchee